STATE ex rel. BURNS, Appellant v. ERICKSON, Respondent

(129 N.W.2d 712)

(File No. 10073. Opinion filed July 30, 1964)

**W. H. Ranney, Jr.,** Sioux Falls, for Defendant-Petitioner and Appellant.

**Frank L. Farrar,** Atty. Gen., **Alfred E. Dirks,** Asst. Atty. Gen., Pierre, for Respondent.

HOMEYER, J. Defendant appeals from a judgment quashing a writ of habeas corpus after hearing. He claims his constitutional rights were violated because (1) the court did not release and discharge his court-appointed attorney and provide him with a substitute attorney, and (2) his oral request for a different judge made when arraigned was denied. The record does not support has claim of a denial of fundamental rights and we affirm the judgment.

Upon a meager record from which we must glean the essential facts, it appears defendant was charged with forgery in the third degree and brought before the Circuit Court of Brookings County for arraignment on January 17, 1961. Before pleading, he was advised of his right to counsel, and upon expressing a desire therefor and satisfying the court that he was indigent, Alvin F. Schulz, a competent, experienced lawyer and a member of the State Bar of South Dakota, was appointed as his counsel. Shortly thereafter Schulz conferred with defendant who was in jail. There is some uncertainty as to the duration of the conference.

On January 26, 1961, defendant and Schulz were both before the court. Schulz informed the court that soon after his appointment he had talked with the defendant and had gone over the case with him; that subsequently defendant had written a letter in which he asked that Schulz no longer represent him. Schulz then stated to the court: "* * * it is my feeling that I should honor that request, and I ask therefore to be relieved from representing this defendant in any manner. I will say that, so far as I have been able, I have advised him to the best of my ability. I believe that I have certain responsibility and that I should not be dictated to, and that I should be allowed to exercise my judgment; and I would say to the Court that certain directions have been given to me that I have refused to follow, and so I would ask to be relieved." The court did not release Schulz, but advised defendant it was his privilege either to use Schulz or defend himself. The arraignment followed, and when asked for his plea to the information, defendant responded, "My plea would be not guilty at this time." Trial time was fixed for the following Monday at 10 a. m. and defendant was again told

"You have an attorney if you care to use him, or you may defend the case yourself," after which he said: "Well, then, I would like to say this, that I have no hard feelings or anything, but I would like to have a different judge. I may not get it, however, I think you can request a different judge if you want; is that right?" He then asked for one of the judges from Sioux Falls expressing disapproval of a second judge in the Brookings circuit and a third judge in the Sioux Falls circuit. Before pleading defendant was also told a supplemental information charging him as a habitual criminal had been filed.

On January 27, 1961, defendant and Schulz were again before the court which opened with the following colloquy: "BY THE COURT: The defendant may stand. Q. You are here now represented by your attorney, Mr. Schulz? A. Yes, sir." He then was fully informed as to the supplemental information and that it could be considered only so far as concerned enhanced punishment on a forgery conviction. Defendant asked that his plea of not guilty be withdrawn and he entered a plea of guilty to the forgery charge. He admitted the five prior felony convictions set forth in the supplemental information correcting some dates and places, admitted knowledge that he could receive a life sentence, and was aware that it was not mandatory. The state's attorney made some remarks favoring leniency after which the court called upon Schulz who made this statement:

"If the Court please, I was trying to think of something during the progress of this hearing, and I don't know if I can recall it all, but I have advised my client on this supplemental information that he is entitled to a jury, and I think he understands that. I just have two things, Your Honor: First, you are aware of the fact that Mr. Burns has been a little uncertain as to what he should do with you, and he has been a little uncertain as to what he should do with me, and I hope you don't hold that against him. He has been a little upset, and that can be explained by the fact that this is a matter that greatly affects him. But I have talked it over with him, and he regrets now what he did, but the thing that troubles me more than anything else, and I think Your

Honor should understand, and the thing that I didn't understand until today. This man is troubled with a persecution complex; he didn't tell me about it until today. He seems to feel that on this first offense when he got three years, I don't know the particulars on that, but he evidently was more or less on the side line on that deal, and that seems to bother him. He seems to think that he got rapped a little bit too tough on that first one, and that seems to carry through his life, and perhaps some consideration should be given to it. That is the thing that bothers him. That is all I can say. He has been good to me, otherwise."

The forgery charge and defendant's past violations of the law were discussed and largely blamed on· a drinking habit. After some admonitory remarks on rehabilitation, the court then imposed a ten-year prison sentence.

██ ██ The scope of review in habeas corpus proceedings is limited, since the remedy is in the nature of a collateral attack upon a final judgment. State ex rel. Smith v. Jameson, 80 S.D. 333, 123 N.W.2d 300. It is not a substitute for an appeal, or a motion for a new trial, or a motion to amend, correct, or vacate a judgment. State ex rel. Ruffing v. Jameson, 80 S.D. 362, 123 N.W.2d 654. Ordinarily post-conviction habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights. State ex rel. Baker v. Jameson, 72 S.D. 638, 38 N.W.2d 441; State ex rel. Flynn v. Rigg, 256 Minn. 304, 98 N.W.2d 79.

██ In criminal actions South Dakota has long recognized an accused's constitutional and statutory guaranty of right to counsel, Article 6, Section 7, South Dakota Constitution, SDC 1960 Supp. 34.1901, SDC 1960 Supp. 34.3506, which in this state at least has been equally comprehensive to that accorded by the federal system. Consequently, the decision of the United States Supreme Court in 1963 extending this constitutional guaranty to state courts as one of the fundamental rights essential to due process under the ·Fourteenth Amendment, Gideon v. Wain-

wright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, is currently without impact on our criminal procedure.

■ The constitutional guaranty of the right to defend assisted by counsel means adequate and effective assistance and the trial court has the duty to appoint competent counsel to represent and advise an indigent accused. A mere perfunctory and casual representation does not satisfy the constitutional guaranty. State ex rel. Parker v. Jameson, 75 S.D. 196, 61 N.W.2d 832. The attorney's obligation and duty to his client is, and must be, the same whether he is paid much or little or nothing at all. Such is the tenor of the oath to which he subscribes when admitted to practice. SDC 1960 Supp. 32.1109. On the other hand, it is also a sound concept that the court-appointed attorney as well as the accused is entitled to fair consideration. An attorney is an officer of any court in which he is entitled to appear. He is a member of a distinguished and time-honored profession. He must conform to recognized ethical standards in criminal practice and be true to his own conscience. Court appointment to represent an indigent does not entail a surrender of the high principles traditionally attached to the legal profession.

■ The right of an accused to the services of legal counsel envisages that his attorney will investigate and consider possible defenses and, if none, other procedures, and exercise his good faith judgment thereon. It does not contemplate that an accused may take charge of the case after an attorney has been appointed, or dictate its course, or make counsel's educated judgment the pawn of an unreasonable and obdurate malefactor.

■ The constitutional guaranty to be represented by counsel does not confer upon an indigent accused the right to require the court to assign him such counsel as he may choose and, in the absence of some compelling reason to the contrary, the attorney selected by the court in the exercise of a sound legal discretion must be accepted. 23 C.J.S. Criminal Law § 982(5); Baker v. State, 86 Wis. 474, 56 N.W. 1088; People v. Kotek, 306 Mich. 408, 11 N.W.2d 7; People v. Ortiz, 195 Cal.App.2d 112, 15 Cal.Rptr. 398; People v. Chessman, 52 Cal.2d 467, 341 P.2d 679; McDowell v. State, 225 Ind. 495, 76 N.E.2d 249. See also United States v. Gutterman, 2 Cir., 147 F.2d 540, 157 A.L.R. 1221.

In State v. Thomlinson, 78 S.D. 235, 100 N.W.2d 121, 77 A.L.R.2d 1229, we held the court may appoint an attorney to confer and consult with an accused before honoring a waiver of counsel and accepting a guilty plea; that this was not pro· hibited by the constitution and was particularly appropriate when the accused was young, inexperienced, mentally immature, or in instances where the crime was of a complex and serious nature. See also State v. Haas, 69 S.D. 204, 8 N.W.2d 569; State v. Sewell, 69 S.D. 494, 12 N.W.2d 198. Conversely, absent such inhibitions an accused had the constitutional right to waive counsel and defend himself in person. See annotation 77 A.L.R.2d 1233. It follows if competent and qualified counsel has been assigned, a refusal to accept such counsel without good reason results in a waiver.

We are satisfied defendant was furnished with competent and adequate counsel. The burden was upon him to show otherwise. State ex rel. Parker v. Jameson, 75 S.D. 196, 61 N.W.2d 832. He has failed to carry this burden. His unfounded dissatisfaction with court-appointed counsel, and the court's refusal to provide other counsel, did not deny him due process.

We find no merit in defendant's second point. The opportunity to disqualify a judge is a statutory, SDC 1960 Supp. 34.0817, and not a constitutional right, except as it may be implicit in a right to a fair trial. Wilson v. State, 222 Ind. 63, 51 N.E.2d 848. The record reveals that on the day following his oral request for a different judge the defendant voluntarily appeared with his counsel and the inference is that any previous objection, to or displeasure with the sentencing judge had been dispelled. To imply coercion into his plea of guilty under the circumstances of this case as contended by defendant would require a lively imagination.

The defendant freely and intelligently in the presence of his counsel and with full knowledge of possible consequences admitted his guilt on the forgery charge and his identity with five prior felony convictions. We fail to perceive error or any basis for a claim of denial of fundamental rights. 22 C.J.S. Criminal

Law § 424(6); State ex rel. Baker v. Jameson, 72 S.D. 638, 38 N.W. 2d 441; State ex rel. Henning v. Jameson, 71 S.D. 144, 22 N.W.2d 731.

The judgment quashing the writ is affirmed.

All the Judges concur.